## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANE DOE, a minor by her** : | **CIVIL ACTION NO. 1:19-CV-1027** |
| **mother and natural guardian,** : | |
| **JAKLYN BROWN, and JAKLYN** : | **(Judge Conner)** |
| **BROWN, individually,** : | |
| : | |
| **Plaintiffs** : | |
| : | |
| **v.** : | |
| : | |
| **HARRISBURG SCHOOL DISTRICT** : | |
| **d/b/a ROWLAND ACADEMY,** : | |
| **J. PATRICK NEWTON, in his** : | |
| **individual and official capacity,** : | |
| **SYBIL KNIGHT-BURNEY, in her** : | |
| **individual and official capacity, minor** : | |
| **MH; IMANI CROWDER, in her** : | |
| **individual and official capacity, and** : | |
| **QUINTON COBB, in his individual** : | |
| **and official capacity,** : | |
| : | |
| **Defendants** : | |

## MEMORANDUM

Plaintiffs Jane Doe, a minor, and her mother, Jaklyn Brown, assert

constitutional, statutory, and state common-law claims against defendants

Harrisburg School District ("the District") and several of its employees.  Presently

before the court is defendants' partial motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6).  For the reasons set forth below, the court will grant

defendants' motion in part and deny it in part.

I.      **Factual Background & Procedural History**

Doe is a former student at Rowland Academy, a middle school within the

District.  (Doc. 33 ¶ 15).  This case arises from Doe's allegation that she was sexually

assaulted by a fellow minor student while at school.  (Id. ¶¶ 39-52).  Plaintiffs assert

that school staff knew Doe was in danger of being sexually assaulted and failed to

prevent the assault.  (Id. ¶¶ 99-102).  The following facts are derived from plaintiffs'

second amended complaint.

Plaintiffs allege that on December 19, 2018, fellow eighth-grade student

MH raped then-15-year-old Doe in a school bathroom.  (Id. ¶¶ 37-42).  Immediately

prior to the alleged assault, Doe and MH were in a basement classroom together

supervised by defendant Imani Crowder.[1]  (See id. ¶¶ 39-45).  School policy requires

students to receive a bathroom pass from a teacher to use the bathroom.  (See id.

¶ 43).  Crowder issued Doe a bathroom pass.  (Id. ¶ 45).  Before Doe returned to the

classroom, Crowder also granted MH a bathroom pass, despite a single-occupancy

bathroom being the only student-accessible bathroom located on the basement

floor.  (Id. ¶¶ 41, 51).  Plaintiffs allege that MH then entered the bathroom and

sexually assaulted Doe.  (Id. ¶¶ 52-54).  Plaintiffs describe a physical struggle

between Doe and MH and aver that MH ordered Doe to "be quiet" multiple times

"in a voice loud enough to be heard from the hallway."  (Id. ¶¶ 52-58).  Plaintiffs

further aver that defendant Quinton Cobb, a school janitor, walked by the bathroom

and made no attempt to stop the alleged assault, even though considerable noise

was emanating from the bathroom.  (Id. ¶ 59).

According to plaintiffs, defendants knew of MH's propensity to engage in

deviant behavior, including sexual assault.  (Id. ¶¶ 47, 64).  Plaintiffs aver that just

---

[1] The second amended complaint does not identify Crowder's position or title.
(See generally Doc. 33).

over a month before the alleged assault, Brown filed a complaint with the District
alleging that MH had been "inappropriately touching . . . Doe in a sexually
aggressive manner and saying inappropriate remarks to her." (Id. ¶ 99).
Defendants purportedly took no action in response to Brown's complaint. (Id.
¶ 100). Plaintiffs further assert that Doe told other faculty members at Rowland
Academy of MH's behavior, that those faculty members informed defendant
Principal J. Patrick Newton, and that Principal Newton failed to act. (Id. ¶¶ 101-
102).

On January 12, 2019, Doe wrote a letter to Brown telling her of the alleged
sexual assault. (Id. ¶ 68). Brown went to Rowland Academy the following Monday,
January 14, and told Principal Newton that Doe had been sexually assaulted. (Id.
¶¶ 69-71). Brown requested that Principal Newton remove Doe from any classes
she shared with MH during the District's investigation of Doe's allegations. (Id.
¶ 73). According to plaintiffs, Principal Newton failed to take any action, demanded
proof in support of Doe's claim, and stated that Doe had "lied before" and must be
"lying this time." (Id. ¶ 74). In response, Brown apparently cursed at Principal
Newton. (Id. ¶ 75). Plaintiffs allege that Principal Newton immediately retaliated
against Brown by filing a police report and banning her from school premises on
January 15. (Id. ¶¶ 76-77).

Brown filed a complaint with the District the next day. (Id. ¶ 78). She
challenged Principal Newton's refusal to separate Doe and MH and stated: "My
daughter cannot go to school and be faced with the perpetrator." (Id.) Despite this
complaint, defendants did not separate Doe and MH. (Id. ¶ 81). Brown claims that,

3

because of this inaction, she later felt compelled to remove Doe from Rowland

Academy and to transfer her to a different school.  (Id. ¶ 91).  Plaintiffs further

allege that, in retaliation for Brown's complaint to the District, Principal Newton

and other employees of the District began calling the detective assigned to Doe's

case.  (Id. ¶¶ 92, 98).  Those individuals accused Doe of posting inappropriate

things on social media and sending an explicit photograph to MH.  (Id. ¶¶ 93, 95).

The detective later determined these accusations to be untrue.  (Id. ¶ 97).

Plaintiffs commenced this action on June 17, 2019, and the case is now

proceeding on their second amended complaint.  Plaintiffs assert constitutional

violations under 42 U.S.C. § 1983 against the District, Principal Newton, District

Superintendent Sybil Knight-Burney, and Crowder, in addition to two Title IX

claims against the District.  Plaintiffs also assert pendent state-law claims of

intentional infliction of emotional distress, negligent infliction of emotional distress,

and negligence against the District, Principal Newton, Superintendent Knight-

Burney, Crowder, and Cobb.  Defendants move to dismiss the state-law claims

against all defendants; all official-capacity claims against the individual defendants;

all claims against Superintendent Knight-Burney; and all claims for punitive

damages.[2]  The motion is fully briefed and ripe for disposition.

---

[2] Plaintiffs have also sued minor MH, but they have not effected service because they have been unable to locate him.  (Doc. 33 ¶¶ 125-128).  Plaintiffs agree to voluntarily dismiss their claims against MH without prejudice and indicate that they will seek leave to amend their complaint if he is located.  (Id. ¶¶ 132, 141, 150, 211).

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578

F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual

allegations, it must determine whether they are sufficient to show a "plausible claim

for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550

U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[]

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 556 U.S. at 678.

### III.   Discussion

Defendants raise several challenges to plaintiffs' complaint. *First*, defendants

contend that certain defendants must be dismissed from plaintiffs' Section 1983

claim.  *Second*, defendants seek dismissal of all state-law claims on the basis of

governmental immunity.  *Last*, defendants move to dismiss all claims for punitive

damages.  We address each claim in turn, beginning with the viability of the Section

1983 claims.

#### A.      Constitutional Claims

Plaintiffs allege claims under Section 1983 of Title 42 of the United

States Code.  Section 1983 creates a private cause of action to redress constitutional

wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source

of substantive rights, but serves as a mechanism for vindicating rights otherwise

protected by federal law.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp

v. Tedder, 96 F.3d 119, 1204 (3d Cir. 1996).  To establish Section 1983 liability, a

plaintiff must prove a deprivation of a "right secured by the Constitution and the

laws of the United States . . . by a person acting under color of state law."  Kneipp,

95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendants do not challenge Doe and Brown's Section 1983 claim on the merits.  Defendants maintain the court should dismiss the official-capacity claim against Principal Newton, Superintendent Knight-Burney, and Crowder because it is redundant of the claim against the District.  Defendants also argue that the court should dismiss the claim against Superintendent Knight-Burney because she was not personally involved in depriving Doe of any constitutionally protected right.

### 1.   *Official-Capacity Claim*

Plaintiffs assert a claim against Principal Newton, Superintendent Knight-Burney, and Crowder in their official capacities in addition to asserting an identical claim against the District.  Defendants argue the official-capacity claim is redundant because such claims merely represent another way of pleading against the District. (Doc. 35 at 10).  They further argue that dismissal of the official-capacity claim will result in a clearer docket.  (Id. at 11).

A court may dismiss official-capacity claims against individual defendants when identical claims are brought against the agency that employs them.  See Cuvo v. De Biasi, 169 F. App'x 688, 693 (3d Cir. 2006) (nonprecedential).  The rationale behind this approach is that "a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them."  Id. at 693 (citing McMillian v. Monroe County, 520 U.S. 781 (1997)).  Judges in this judicial district regularly exercise their discretion to dismiss redundant official-capacity claims.  See, e.g., Judge v. Shikellamy Sch. Dist., 135 F. Supp. 3d 284, 301 (M.D.

7

Pa. 2015) (Brann, J.) (dismissing Section 1983 official-capacity claims against school administrators when plaintiffs also asserted identical claims against school district); M.S. *ex rel*. Hall v. Susquehanna Twp. Sch. Dist., 43 F. Supp. 3d 412, 419 (M.D. Pa. 2014) (Kane, J.) (same).

The official-capacity claims against Principal Newton, Superintendent Knight-Burney, and Crowder function identically to the claim against the District, and plaintiffs offer no justification for retaining both. The court will therefore grant defendants' motion to dismiss these claims.

### 2. *Claims Against Superintendent Knight-Burney*

Plaintiffs have sued Superintendent Knight-Burney under Section 1983 for purportedly knowing of the risk to Doe and failing to prevent her alleged assault. (Doc. 33 ¶ 173). Defendants posit that plaintiffs have failed to plead any factual allegations to establish that Superintendent Knight-Burney was personally involved in the events underlying plaintiffs' constitutional claim. (Doc. 35 at 9-10). Although a close call, we agree.

A Section 1983 plaintiff may seek to hold an official personally liable if that official, acting under color of state law, "caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). The plaintiff must plead the defendant's "personal involvement in the alleged wrongs" by "describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Thus, a supervisory defendant cannot be held liable for the conduct of a subordinate on a

theory of *respondeat superior*.  Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016)

(citing Chavarriaga, 806 F.3d at 227).  Supervisory liability will attach in only one of

two ways: *first*, when a supervisor "established and maintained a policy, practice[,]

or custom which directly caused the constitutional harm," and, *second*, when the

supervisor either "participated in, directed, or had knowledge of and acquiesced in

their subordinates' violations."  Id. (quoting Santiago, 629 F.3d at 129 n.5).

Plaintiffs fail to sufficiently link Superintendent Knight-Burney to any event

underlying the Section 1983 claim.  Throughout the second amended complaint,

plaintiffs mention Superintendent Knight-Burney by name 10 times, and each time

plaintiffs fail to assert more than bare-boned, conclusory allegations.  For example,

plaintiffs assert Knight-Burney "acted or failed to act within the scope, course, and

authority of her employment and her employer, and in her individual capacity,"

(Doc. 33 ¶ 18); that "Knight-Burney . . . engaged in a pattern and practice of

behavior that put Plaintiff Doe at a high risk of being sexually assaulted," (id.

¶ 173); and that "Knight-Burney . . . engaged in a pattern and practice of behavior

designed to discourage and dissuade students and parents of students who had

been sexually assaulted from seeking prosecution and protection," (id. ¶ 174).  Even

viewing the second amended complaint in a light most favorable to plaintiffs, these

allegations do not pass muster.  Accordingly, we will dismiss plaintiffs' Section 1983

claim against Superintendent Knight-Burney.

## B.    State-Law Claims

Doe and Brown assert state-law intentional infliction of emotional distress

("IIED"), negligent infliction of emotional distress ("NIED"), and negligence claims

against all defendants under Pennsylvania law.  In response, defendants claim

immunity under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"),

42 PA. CONS. STAT. §§ 8541-8564.

The PSTCA grants immunity from liability to local agencies and their

employees "for any damages on account of any injury to a person or property

caused by any act of the local agency or an employee thereof or any other person."

42 PA. CONS. STAT. § 8541.  "The overall purpose of the [PSTCA] . . . is to limit

governmental exposure to tort liability for its acts."  Sphere Drake Ins. Co. v. Phila.

Gas Works, 782 A.2d 510, 515 (Pa. 2001) (citing Lory v. City of Philadelphia, 674 A.2d

673, 675-76 (Pa. 1996)).  The requisites for invoking immunity under the PSTCA

differ depending on the tort (*i.e.*, negligent vs. intentional) and the defendant (*i.e.*,

agency vs. employee).  Because of these distinctions, we address the claims against

the District and the individual defendants separately.

### 1. *Immunity of the District*

"Under the []PSTCA, local agencies such as school districts are given broad

tort immunity."  Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006).  As a general rule,

a local agency may not be held liable for intentional torts.  See 42 PA. CONS. STAT.

§ 8542(a)(2); Overstreet v. Borough of Yeadon, 475 A.2d 803, 803-04 (Pa. Super. Ct.

1984); see also Lory, 674 A.2d at 675-76 (emphasizing that a local agency can only be

held liable for certain *negligent* acts).  Accordingly, school districts are routinely

granted immunity on intentional-tort claims.  See, e.g., Klump v. Nazareth Area

Sch. Dist., 425 F. Supp. 2d 622, 628 (E.D. Pa. 2004) (invasion of privacy suit); Kessler

v. Monsour, 865 F. Supp. 234, 240-41 (M.D. Pa. 1994) (IIED suit); Petula v. Mellody,

631 A.2d 762, 765 (Pa. Commw. Ct. 1993) (defamation suit).  Because the District

is a local agency as contemplated by the PSTCA, it is immune from liability for

intentional torts.  Hence, we will dismiss plaintiffs' IIED claim against the District.

We reach a different conclusion with regard to plaintiffs' negligence claims

against the District.  Under the PSTCA, a local agency is generally shielded from

tort liability for negligent acts, subject to certain exceptions.  42 PA. CONS. STAT.

§ 8542(a).  Defendants argue that plaintiffs' claims do not fall within the PSTCA's

"eight categories of 'negligent acts." (Doc. 35 at 5).  Neither party acknowledges

that the General Assembly amended the PSTCA in 2019 to add a ninth exception

that is directly applicable here.

The PSTCA's ninth excepted category of negligence permits suit against

local agencies and their employees in cases involving sexual abuse provided "the

injuries to the plaintiff were caused by actions or omissions of the local agency

which constitute negligence." 42 PA. CONS. STAT. § 8542(b)(9).  The General

Assembly explicitly declared the amendment to be retroactive to causes of action

that arose before the legislation's effective date and for which the limitations period

has not yet expired.  See Act of Nov. 26, 2019, No. 87, § 10(3)(ii).  The intended

purpose of this amendment to the PSTCA was to "waive sovereign immunity for

public entities guilty of covering up childhood sexual abuse." PA. H.R. LEGIS.

JOURNAL, 203rd Assy., Reg. Sess., at 510 (Apr. 10, 2019).

Plaintiffs assert a claim for negligence against the District based on the

District's alleged failure to protect Doe from the known risk of sexual abuse that

MH presented.  (Doc. 33 ¶¶ 189-191).  This allegation falls squarely within the new

11

exception, and the District does not argue otherwise.  Since the District does not

challenge plaintiffs' negligence claim on the merits, but only seeks to invoke

immunity under the PSTCA, (Doc. 35 at 4-6), we will deny defendants' motion to

dismiss with respect to the negligence claim against the District.

### 2.  *Immunity of Individual Defendants*

The PSTCA exempts from its protective scope any employee whose act

constitutes "a crime, actual fraud, actual malice or willful misconduct."  42 PA.

CONS. STAT. § 8540; see Sanford, 456 F. 3d at 315.  Willful misconduct is more than

recklessness or deliberate indifference.  See Bright v. Westmoreland County, 443

F.3d 276, 287 (3d Cir. 2006) (citing Williams v. City of Philadelphia, 569 A.2d 419,

421-22 (Pa. Commw. Ct. 1995)).  Rather, willful misconduct includes only such

conduct that shows that an employee "desired to bring about the result that

followed" or "was aware that it was substantially certain to follow, so that such

desire can be implied."  Sanford, 456 F.3d at 315 (quoting Renk v. City of

Pittsburgh, 641 A.2d 389, 293 (Pa. 1994)).  It is synonymous with an "intentional

tort."  Id.

Defendants argue that plaintiffs fail to adequately plead willful misconduct.

We agree.  Plaintiffs do not include in their second amended complaint any well-

pled factual allegations that Principal Newton, Superintendent Knight-Burney,

Crowder, and Cobb, through their inaction, desired to bring about the result that

followed (the alleged sexual assault) or that those individuals were substantially

certain such a result would occur.  Plaintiffs aver only that defendants' "intentional

actions" or "deliberate indifference to the discrimination and sexual harassment of

12

Plaintiff Doe" caused Doe "severe emotional distress." (Doc. 33 ¶ 136). Such

conclusory allegations cannot survive Rule 12 scrutiny.[3] Because plaintiffs fail to

adequately plead willful misconduct, the court finds that the individual defendants

are immune from plaintiffs' IIED claim under the PSCTA.[4]

We again reach a different result as to the negligence and NIED claims.

An individual employee's immunity from negligence claims is coextensive with the

agency's immunity and is subject to the same exceptions. See 42 PA. CONS. STAT.

§ 8545. Consequently, the new exception for cases involving sexual abuse applies

equally to the District and its individual employees. See id. §§ 8542(b)(9), 8545.

Principal Newton, Superintendent Knight-Burney, Crowder, and Cobb do not

possess immunity under the PSTCA. We will deny defendants' motion to dismiss

plaintiffs' negligence and NIED claims.

### C.     Claims for Punitive Damages

In the second amended complaint, plaintiffs allege that defendants'

conduct is outrageous and make demands for punitive damages. (Doc. 33 ¶ 119).

Defendants argue such damages are not available against the District as a matter of

---

[3] Plaintiffs offer a new allegation in their opposition brief. Plaintiffs aver that defendants "verbally and mentally tormented Doe" after she reported the assault. (Doc. 36 at 10). This allegation finds no factual support in the second amended complaint, and courts cannot consider after-the-fact allegations offered in an opposition brief at the Rule 12 stage. See Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007). Plaintiffs' statement in their opposition brief cannot salvage this otherwise deficiently pled claim.

[4] Defendants further challenge plaintiffs' IIED claim as facially deficient. (See Doc. 35 at 7-8). As previously noted, defendants have immunity as to this claim under the PSTCA, and we see no reason to address this argument.

law.  (Doc. 35 at 11).  Additionally, defendants contend that plaintiffs fail to plead

"outrageous conduct" that would support a claim for punitive damages.  (Id. at 12).

Defendants are correct that plaintiffs may not recover punitive damages

against the District.  As a matter of public policy, punitive damages are not

recoverable against a municipality in Pennsylvania.  See City of Newport v. Fact

Concerts, Inc., 453 U.S. 247, 263 (1981); Feingold v. SEPTA, 517 A.2d 1270, 1277

(Pa. 1986).  A school district is considered a local agency under the PSTCA, and

therefore punitive damages are not recoverable against the District.  Plaintiffs

concede as much in their opposition brief.  (See Doc. 36 at 18).  Thus, the court will

grant defendants' motion to dismiss all claims for punitive damages as pertains to

the District.

The policy safeguards protecting the District, however, do not extend to its

employees sued in their individual capacities.  See Udujih v. City of Philadelphia,

513 F. Supp. 2d 350, 358 (E.D. Pa. 2007) (collecting cases).  Under Pennsylvania law,

punitive damages are available to a plaintiff when "the defendant's actions are so

outrageous as to demonstrate willful, wanton, or reckless conduct."  Hutchinson *ex

rel.* Hutchinson v. Luddy, 870 A.2d 766, 770 (Pa. 2005); see also Feld v. Merriam, 485

A.2d 742, 748 (Pa. 1984).  A claim for punitive damages under Section 1983 requires

allegations that the defendant acted with "'a reckless or callous disregard of, or

indifference to, the rights and safety of other.'"  Keenan v. City of Philadelphia,

983 F.2d 459, 469-470 (3d Cir. 1983) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).

Thus, the punitive-damages inquiry requires an assessment of the defendant's state

of mind.  See Alexander v. Riga, 208 F.3d 419, 430-431 (3d Cir. 2000); Feld, 85 A.2d at

748.  Accordingly, punitive damages analysis requires a careful look at the unique

facts of each case.  Fiedler v. Stroudsburg Area Sch. Dist., 427 F. Supp. 3d 539, 558

(M.D. Pa. 2019).  In light of the fact-intensive nature of the inquiry, courts in this

district often defer punitive damages questions until after discovery.  See id.;

Campbell v. Balon, No. 16-779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017);

Bobrick Washroom Equip., Inc. v. Scranton Prods., Inc., No. 14-853, 2017 WL

2126320, at *11 n.15 (M.D. Pa. May 16, 2017).

The misconduct alleged by plaintiffs as pertains to Principal Newton,

Superintendent Knight-Burney, Crowder, and Cobb is sufficient to support a

plausible claim for punitive damages at the pleading stage.  Plaintiffs allege that the

individual defendants knew of the danger MH posed to Doe and failed to prevent

her alleged assault; that they knew "sexual assaults occurred in the bathrooms at

[d]efendants' schools when students were not properly supervised or properly

restricted in access to the bathroom"; and that the administration failed to act to

prevent the alleged assault.  (Doc 33 ¶¶ 47, 50, 99-103).  These factual allegations,

if proven, plausibly support a claim for punitive damages.  Thus, we will deny the

motion to dismiss plaintiffs' claims for punitive damages against Principal Newton,

Superintendent Knight-Burney, Crowder, and Cobb.

## D.    Leave to Amend

Courts generally must grant leave to amend before dismissing a civil

rights claim if a curative amendment is conceivable.  See Grayson v. Mayview State

Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The court is aware that, since the filing of

the second amended complaint, more discovery has occurred.  It is wholly possible

plaintiffs have unearthed more facts to support their supervisor liability theory against Superintendent Knight-Burney or to plead willful misconduct against the individual defendants.  Curable amendment is conceivable to this extent, so we will dismiss the Section 1983 claim against Superintendent Knight-Burney and the IIED claim against the individual defendants with leave to amend.  The balance of our determinations—*viz.*, dismissal of the duplicative official-capacity claims against the individual defendants and the IIED and punitive damages claims against the District—turn on legal deficiencies.  Accordingly, those claims will be dismissed with prejudice.

## IV.   Conclusion

The court will grant in part and deny in part defendants' motion (Doc. 34) to dismiss, as more fully explained herein.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    August 10, 2020